UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALPHACARD SYSTEMS LLC, DISCOUNTID.COM LLC, and ID CARD GROUP LLC<br><br>Plaintiffs,<br><br>v.<br><br>FERY LLC,<br><br>Defendant. | Case No. |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

AlphaCard Systems LLC ("AlphaCard"), DiscountID.com LLC ("DiscountID"), and ID Card Group LLC ("ID Card Group" and, collectively with AlphaCard and DiscountID, "Plaintiffs"), by and through their undersigned counsel, hereby state the following as their Complaint and Demand for Jury Trial ("Complaint") against Fery LLC ("Fery" or "Defendant"):

**NATURE OF THE LAWSUIT**

1. Plaintiffs are engaged in the business of selling products such as identification ("ID") card printers, ID card printer ribbons, cameras, software, and blank ID cards to businesses, schools, and other organizations that need to create and print their own ID cards. Plaintiffs are an industry-leading seller of customized ID card solutions and supplies.

2. Fery, doing business under the trade name "Bodno," is a direct competitor of Plaintiffs. Fery is a recent entrant into the ID card solutions and supplies business. But instead of competing with Plaintiffs for sales by offering better pricing, service, or products, Fery has opted to "compete" through a concerted and pervasive campaign of false advertising.

1

3. Plaintiffs and Fery both sell ID card products through sales channels including websites such as amazon.com ("Amazon"). Because Plaintiffs and Fery compete directly for sales of the same or highly similar products, the placement of the parties' respective product listings within search results for generic terms such as "ID card printer" is vitally important in determining which company wins more sales.

4. Fery is engaged in a false advertising scheme that employs fake customer reviews on its Amazon product listings in order to artificially and unfairly boost its sales on Amazon. By falsely inflating the "star" ratings of its products on Amazon, Fery has improperly captured favorable search positions for those products, deceived consumers by creating the false impression that Fery's products are better received by customers than they in fact are, stolen sales from Plaintiffs, and harmed Plaintiffs' reputation and customer goodwill. Fery's entire product listings are tainted and misleading as a result of the bogus reviews.

5. Fery's fake customer review scheme is a present-day version of classic false and deceptive advertising scams barred by the Federal Trade Commission Act, 15 U.S.C. § 41 *et seq*. In fact, the Federal Trade Commission ("FTC") has recently stepped up enforcement actions against online marketers just like Fery that it has found to have falsely manipulated online customer reviews.

6. Fery's false advertising scheme also violates the Lanham Act, 15 U.S.C. § 1051 *et seq*. and New Jersey common law. Plaintiffs seek injunctive relief, damages, attorneys' fees, costs, and such further and other relief as this Court deems just and equitable.

## THE PARTIES

7. AlphaCard is a Delaware limited liability company with its principal place of business and headquarters at Portland, Oregon.

8. DiscountID is an Oregon limited liability company with its principal place of business and headquarters at Portland, Oregon.

9. ID Card Group is an Oregon limited liability company with its principal place of business and headquarters at Portland, Oregon.

10. Upon information and belief, Fery is a New Jersey limited liability company with its principal place of business and headquarters at 585 North County Line Rd, Suite 2, Jackson, New Jersey 08527.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over Plaintiffs' claim arising under Section 43(a) of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1125(a), pursuant to 28 U.S.C. § 1331. This Court has supplemental subject matter jurisdiction over Plaintiffs' claim arising under New Jersey common law under 28 U.S.C. § 1367(a) because that claim is so related to Plaintiffs' federal Lanham Act claim against Fery that it forms part of the same case or controversy under Article III of the United States Constitution.

12. This Court has personal jurisdiction over Fery because it is a New Jersey limited liability company with its principal place of business in New Jersey.

13. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred here.

## FACTUAL BACKGROUND

**A. Plaintiffs' ID card solutions business.**

14. Plaintiffs sell customizable ID card solutions and related supplies. Plaintiffs' customers—such as schools and office building managers—are consumers who need the ability to easily and efficiently create and print ID cards. Plaintiffs sell the full range of products needed to

3

meet their customers' needs, including ID card printers, blank ID cards, ID card printer ribbons, cameras, and software used in ID card printing.

15.     Many of the products Plaintiffs sell, including ID card printers, are manufactured by third parties.  Plaintiffs typically purchase these products from their suppliers, install Plaintiffs' own software on the ID card printers (which allows customers to plug the printers into their computers and use them), and sell these products and Plaintiffs' software to consumers, "bundled" together into a single package.  For example, among Plaintiffs' top selling products are ID card printers manufactured by a third party, Magicard, which Plaintiffs typically sell bundled with AlphaCard's ID Suite software.  Similarly, customers may purchase ID card printing supplies from Plaintiffs bundled together with an ID card printer and Plaintiffs' software, or they may buy stand-alone supplies.

16.     Plaintiffs list and sell all of their products on Amazon Marketplace, which is a significant sales channel for Plaintiffs' products.  We describe Amazon Marketplace below.

**B.  Selling products on Amazon Marketplace.**

17.     Amazon is an online retail behemoth: Bloomberg recently reported that it accounts for approximately 40-50% of all online commerce in the United States.

18.     One part of Amazon's business operates as a typical retailer, buying goods from suppliers and re-selling them to consumers.  However, Amazon also operates an online sales platform, commonly known as "Amazon Marketplace," where sellers like Plaintiffs can list their products and sell them directly to consumers, without Amazon ever taking title to any inventory.  Most products sold on www.amazon.com today are in fact sold by sellers using Amazon Marketplace; Amazon's Chief Executive Officer, Jeff Bezos, recently disclosed that independent sellers using Amazon Marketplace now account for approximately 58% of Amazon's gross

merchandise sales.  Sellers using Amazon Marketplace ship their products to Amazon warehouses and pay Amazon fees to store their products, list them for sale on Amazon Marketplace, and ultimately ship them to consumers.

19. When multiple sellers list substantially similar products for sale on Amazon Marketplace—such as a Magicard ID card printer sold by both Plaintiffs and Defendant—consumers searching for that product do not automatically see all competing listings.  Instead, consumers see a ranked list of search results, ordered according to Amazon's proprietary product ranking algorithms.  A product's listing is determined in part based upon the favorability of the product's underlying customer reviews. A higher customer review score provides a product a more favorable placement in Amazon search results.

20. Plaintiffs track customer reviews on their Amazon listings, including tracking the number of reviews they receive per sale.  While Plaintiffs are a leading seller of ID card printers and supplies, Plaintiffs have observed that very few of their customers leave customer reviews on Amazon.

C. **The growing problem of unlawful, fake online customer reviews.**

21. Consistent with state and federal law, as described below, Amazon has rules governing sellers on Amazon Marketplace.  With respect to customer reviews, Amazon policies bar Amazon Marketplace sellers from purchasing positive reviews or otherwise improperly incentivizing customers to leave positive reviews, as well as from paying or improperly incentivizing customers to remove *negative* reviews.

22. However, as Amazon Marketplace has grown, unscrupulous online merchants have learned that they can boost their sales by placing positive (and fake) reviews of their products in bulk, thereby taking advantage of online consumers' reliance on customer reviews.  Multiple

media outlets have recently documented the increasing prevalence and sophistication of fake customer reviews on Amazon and other online retail platforms.[1]

23. Many businesses (often based overseas) have popped up promising online merchants the ability to secure fake positive reviews of their products in exchange for payment. For example, in the *Cure Encapsulations* enforcement action, discussed below, the Federal Trade Commission ("FTC") penalized an Amazon Marketplace merchant who had used the website www.amazonverifiedreviews.com, which promised Amazon Marketplace sellers that they can "Push your product towards the top!" using fake "verified" product reviews that will "help your product rank better in the [Amazon] internal search engine."

24. In response to this trend, the FTC has recently stepped up enforcement actions against crooked online merchants who purchase false customer reviews or otherwise manipulate their online reviews. In *Federal Trade Commission v. Cure Encapsulations, Inc.*, No. 19-cv-982 (E.D.N.Y. 2019), the FTC slapped an online merchant with a permanent injunction and a multi-million-dollar fine for buying fake reviews in order to inflate its ratings on Amazon Marketplace. And in *In re Sunday Riley Modern Skincare, Inc.*, No. 192-3008 (F.T.C. 2019), the FTC sanctioned a merchant for instructing its own employees to post fake reviews of its products online.

25. Multiple customer review analysis tools exist to help honest businesses combat the problem of fake online customer reviews, and to help consumers evaluate the reliability of online reviews. Two of the leading examples are ReviewMeta (www.reviewmeta.com) and FakeSpot

---

[1] *E.g.*, CBS News, "Buyer beware: Scourge of fake reviews hitting Amazon, Walmart and other major retailers," available at https://www.cbsnews.com/news/buyer-beware-a-scourge-of-fake-online-reviews-is-hitting-amazon-walmart-and-other-major-retailers/; BuzzFeed News, "Amazon Sellers Are Using Facebook Chatbots To Cheat Their Way To Good Reviews," available at https://www.buzzfeednews.com/article/nicolenguyen/amazon-sellers-facebook-chatbots-fake-reviews; The Independent, "'Shoddy' products get fake stellar reviews on Amazon, Which? finds," available at https://www.independent.co.uk/news/business/news/amazon-fake-reviews-which-finds-headphones-bluetooth-a9166601.html; The Times, "Can you trust the reviews on Amazon?", available at https://www.thetimes.co.uk/article/can-you-trust-the-reviews-on-amazon-h9t902fwq.

(www.fakespot.com). ReviewMeta and FakeSpot are free-to-use online tools that automatically scan and analyze the customer reviews on an Amazon Marketplace listing, in order to identify indicators of fake reviews, such as reviews that are suspiciously clustered together by date, reviews that use repetitive language, serial reviewers of a single seller's products, or "one-off" reviews by reviewers with no other online reviews to their names.

**D. Defendant's scheme of false and deceptive advertising.**

26. Defendant, doing business as Bodno, sells substantially similar third-party manufactured products as Plaintiffs sell on Amazon Marketplace. Just as Plaintiffs sell ID card printers and supplies bundled with AlphaCard software, Defendant, for its part, sells ID card printers and supplies bundled with Bodno software.

27. Defendant's Amazon Marketplace business plan for Bodno products is nothing more than a wholesale campaign of false advertising. Defendant's product listings appear to contain hundreds of phony, rave customer reviews. Tellingly, the number and frequency of Defendant's glowing reviews in the last twelve month period, including suspiciously spiked numbers of reviews on particular days and during particular weeks, are far out of proportion to the rate at which Defendant had historically received customer reviews for the same products. Defendant's reviews are also almost uniformly five-star reviews, the highest possible rating on Amazon.

28. As shown on the graph below, Defendants' listings are packed with reviews on certain dates and weeks, rather than consisting of individual reviews occurring at the steady and random pace that would be expected for genuine customer reviews.



29. Defendant's listings also contain a multiple of the number of customer reviews contained on Plaintiffs' listings, even though Plaintiffs are the leading sellers of substantially similar products.

30. On information and belief, Defendant placed these positive reviews in bulk, in order to artificially jump the listings of Defendant's products to the top of Amazon's search results and to deceive consumers into believing Defendant's products were higher quality and more trustworthy and reputable than Defendant's competitors' products.

31. Defendant's false advertising campaign has tainted Defendants' all of product listings on Amazon Marketplace. For Defendant's 25 different Bodno product listings analyzed in October 2019, FakeSpot estimates that fewer than half (approximately 48%) of the customer reviews in the listings are "reliable," and 32% of the listings received a grade of "F." ReviewMeta estimates that approximately a third (34%) of the customer reviews contained in Bodno's 25 Amazon Marketplace listing are "unnatural."

32. Among other things, the excessive and disproportionate volume of highly favorable customer reviews placed on particular days and during particular weeks exposes their dubious nature. For example, as of the date of this Complaint, Defendant's listing for one of its products,

Bodno Magicard Pronto ID Card Printer & Complete Supplies Package with Bodno ID Software and Camera ("Bodno Magicard Pronto Package"),[2] has purportedly received 100 customer reviews in the seven months beginning in April 2019.  That figure represents a whopping 355% increase over the total number of customer reviews that the same listing received in the entire prior seven month period (October 2018 through March 2019).  That figure is also a multiple of the number of reviews that Plaintiffs' listing of the same product bundled with AlphaCard Software received.

33. The characteristics of the customer reviews of the Bodno Magicard Pronto Package also indicate fraud:

    a. Analysis of this listing using the third-party customer review analysis tool ReviewMeta yielded a result of FAIL—ReviewMeta's lowest reliability score. ReviewMeta's analysis indicates that over 100 of the 141 customer reviews currently present on this Amazon listing are "unnatural."  *See* Ex. A.

    b. Analysis of this listing using another third-party customer review analysis tool, FakeSpot, yielded a grade of D, FakeSpot's second-lowest reliability grade, suggesting there is "high deception" involved in this listing.  FakeSpot's analysis suggests that fewer than 40% of the reviews on this listing were "reliable."  *See* Ex. B.

    c. Statistical analysis indicates that if these customer reviews were created randomly over the period of time they cover, there is a greater than 99% chance that no more than three reviews would ever be placed on a single given day.  Yet on multiple occasions, more (sometimes far more) than three reviews have been placed on this listing in a single day: for example, June 17, 2019 (nine reviews); June 18, 2019

---

[2] Available at https://www.amazon.com/Magicard-Complete-Supplies-Bodno-Software/dp/B076H91LHT

(four reviews); August 8, 2019 (nine reviews); September 10, 2019 (nineteen reviews); September 11, 2019 (six reviews); and September 12, 2019 (four reviews). On information and belief, these unnatural clusters of reviews occurred because on or around these dates, Defendant placed fake customer reviews.

d. The average review score of customer reviews placed on days when more than three reviews were placed is 4.8/5, which is significantly higher than even the inflated average review score of phony reviews placed on lower volume review days.

34. Other Bodno listings are similarly rife with sham reviews. For example, ReviewMeta found Defendant's listing of the Fargo DTC1250e ID Card Printer & Complete Supplies Package with Bodno Software (the "Bodno Fargo Package")[3] to have nearly half (49%) "unreliable" reviews, and noted that the listing received higher average reviews on days with suspiciously high review volumes than on other days. *See* Ex. A. FakeSpot's analysis gives the Bodno Fargo Package's customer reviews a grade of F, and judged that the listing had "insufficient reliable reviews" for FakeSpot even to attempt to estimate the average star rating the product would have if all unreliable reviews were removed. *See* Ex. B.

35. As another example, Defendant's listing for the Magicard Enduro 3e Dual Sided ID Card Printer & Complete Supplies Package with Bodno ID Software (the "Bodno Magicard Enduro Package") received a perfect 5.0 star rating from "reviewers" on what ReviewMeta's analysis concluded were suspiciously high-volume review days. *See* Ex. A. Similarly, FakeSpot's analysis concluded that a mere 15.8% of the Bodno Magicard Enduro Package's reviews were "reliable." *See* Ex. B.

---

[3] Available at https://www.amazon.com/DTC1250e-Complete-Supplies-Bodno-Software/dp/B01MS90CBY/

36. Defendant's entire Amazon Marketplace presence is contaminated by fake reviews. The hundreds of false consumer reviews Defendant has cast a shroud over the entirety of Defendant's Amazon Marketplace product listings. Having established dominant Bodno product placement through fake customer reviews, it is not enough for Defendant to simply remove the fake customer reviews from individual listings. Rather, Defendant must remove its entire Amazon Marketplace product listings, which are themselves the product of Defendant's pervasive fake customer review artifice for the Bodno brand products.

37. Defendant's fake consumer reviews are literally false and misleading. These phony reviews purport to state a consumer's honest opinion of a product that the reviewer did not in fact purchase, and/or is not in fact evaluating honestly.

38. Defendant's false advertising campaign for the Bodno brand exploits Amazon's search algorithm by both falsely inflating the reviews of Defendant's listings, and wrongfully increasing Defendant's sales. On information and belief, Amazon's search ranking algorithm rewards sellers for both high reviews *and* high sales. By falsely inflating its own reviews and thereby illegally increasing its sales, Defendant is able to create a self-reinforcing cycle of wrongful gains—all at the expense of innocent consumers and honest competitors like Plaintiffs.

39. Defendant's false advertising scheme has harmed, and continues to harm, Plaintiffs. As a direct result of Defendant's use of fake consumer reviews on its Amazon Marketplace listings, Plaintiffs' products have been pushed down the page in Amazon search results, and Plaintiffs have lost sales and customer goodwill. Plaintiffs have also lost reputation, because Defendant's falsely inflated average customer reviews for its listings make Plaintiffs' average customer reviews for the same products look poorer in comparison than they actually are.

**E. Following notice, Defendant willfully continues its false advertising scheme.**

40. After becoming aware of Defendant's unlawful activity, Plaintiffs sent Defendant a cease-and-desist letter on October 25, 2019, demanding that Defendant, among other things, remove its offending Bodno product listings from Amazon Marketplace and cease its solicitation and use of fake customer reviews no later than November 1, 2019.

41. While a lawyer identifying herself as counsel to Defendant and its principal acknowledged receipt of Plaintiffs' cease and desist letter on November 6, 2019, Defendant's lawyer stated only that she will "respond in due course."

42. Tellingly, neither Defendant, nor its principal, nor their counsel denies that Defendant is engaged in a false advertising scheme for its Bodno products.

43. Defendant continues to list its products for sale on Amazon Marketplace with false customer reviews, and with falsely inflated average customer reviews displayed.

44. Defendant's willful and intentional refusal to take down its unlawful, fake reviews leaves Plaintiffs no choice but to seek relief from this Court.

**COUNT I**
**False Advertising—15 U.S.C. § 1125(a)**

45. Plaintiffs incorporate all of the foregoing allegations in the Complaint as though fully set forth herein.

46. By placing false customer reviews on Amazon, Defendant has caused literally false and misleading statements to appear in customer reviews of its products on Amazon. The fake customer reviews placed by Defendant contain untrue statements of fact, including explicit or implicit statements that reviewers purchased Defendant's products when they did not, and/or false statements about the quality of Defendant's products.

47. Defendant's fake consumer reviews are a form of advertising. Defendant places fake consumer reviews on Amazon in order to make its products appear to be highly reviewed by consumers, and therefore attractive to other consumers.

48. Placing fake customer reviews of a product deceives a substantial portion of consumers shopping for that product or similar products. Consumers who read individual reviews on Amazon, or view an Amazon listing's average customer review star rating, generally assume that the customer reviews on an Amazon listing are genuine and that they reflect the honest, unbiased opinions of actual purchasers of that product. But fake customer reviews are not genuine and do not reflect the honest, unbiased opinion of actual purchasers.

49. Customer reviews on Amazon listings, and the average customer review star rating on an Amazon listing, are material to the purchasing decisions of consumers. Defendant's fake customer reviews deceive consumers into purchasing Defendant's products.

50. Defendant's falsely advertised products listed on Amazon travel in interstate commerce.

51. Through its wrongful, fraudulent, and illegal false advertising scheme, Defendant intentionally and improperly stole favorable Amazon search result positions from Plaintiffs, and thereby intentionally prevented Plaintiffs from making sales to customers to whom Plaintiffs had a reasonable expectation of making sales.

52. Plaintiffs have been damaged by Defendant's false advertising scheme, including lost sales and profits as well as ongoing and irreparable injuries such as lost market share and declining goodwill, for which there is no adequate remedy at law.

53. Plaintiffs are entitled to judgment awarding them injunctive relief (including requiring Defendant to remove all Bodno listings from Amazon Marketplace), treble damages, disgorgement of profits, attorneys' fees, costs, and all other appropriate relief.

## COUNT II
### Tortious Interference with Prospective Business Advantage

54. Plaintiffs incorporate all of the foregoing allegations in the Complaint as though fully set forth herein.

55. Plaintiffs had prospective economic relationships with customers through Amazon, and had a reasonable expectation of gaining sales through those relationships.

56. Defendant knew or should have known of Plaintiffs' prospective economic relationships with Amazon customers and reasonable expectations of economic gain.

57. Through its wrongful, fraudulent, and illegal false advertising scheme, Defendant intentionally and improperly stole favorable Amazon search result positions from Plaintiffs, and thereby intentionally prevented Plaintiffs from making sales to customers to whom Plaintiffs had a reasonable expectation of making sales.

58. It is highly likely that, absent Defendant's wrongful conduct in carrying out its false advertising scheme, Plaintiffs would have made many or all of the sales through Amazon that Defendants made.

59. Plaintiffs have been damaged by Defendant's conduct, in the form of lost sales and profits as well as ongoing and irreparable injuries such as lost market share and declining goodwill, for which there is no adequate remedy at law.

60. Plaintiffs are entitled to judgment awarding them injunctive relief, damages, punitive damages, and all other appropriate relief.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

A. Judgment in favor of Plaintiffs and against Fery on each count of the Complaint;

B. An order permanently enjoining Fery from engaging in false advertisement of its products, ordering Fery to remove all of its product listings from Amazon, requiring Fery to inform Amazon of its use of false customer reviews, and ordering Fery to cease selling its products on Amazon for a period sufficient to correct any gains in market share and/or goodwill attributable to the conduct on which Plaintiffs' claims are based;

C. An accounting and disgorgement of all profits Fery has gained through the sale of products via Amazon listings that feature false customer reviews;

D. An award of monetary damages in favor of Plaintiffs, for amounts necessary to make Plaintiffs whole for the damages they suffered as a proximate cause of Fery's wrongful conduct;

E. Treble damages;

F. Punitive damages;

G. An award of Plaintiffs' reasonable attorneys' fees and costs incurred in connection with this action; and

H.	Such other and further relief in Plaintiffs' favor as may be just and equitable.

Date: November 12, 2019

Respectfully submitted,

*/s/ Steven F. Gooby*
Steven F. Gooby
Ansa Assuncao LLP
100 Matawan Road
Suite 410
Matawan, NJ 07747
Tel: (732) 993-9848
Fax: (732) 993-9851
steven.gooby@ansalaw.com

Timothy B. Hardwicke (*pro hac vice to be filed*)
Andrew H. Schrag (*pro hac vice to be filed*)
GoodSmith Gregg Unruh LLP
150 S. Wacker Drive
Suite 3150
Chicago, IL 60606
Tel: (312) 322-1981
Fax: (312) 322-0056
thardwicke@ggulaw.com
aschrag@ggulaw.com

*Counsel for AlphaCard LLC, DiscountID.com LLC, and ID Card Group LLC*

## **CERTIFICATION PURSUANT TO L. CIV. R. 11.2**

I certify, under penalty of perjury, that to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

Dated:  November 12, 2019

                                                */s/ Steven F. Gooby*
                                                Steven F. Gooby
                                                ANSA ASSUNCAO, LLP
                                                100 Matawan Road, Suite 410
                                                Matawan, New Jersey  07747
                                                Telephone:  (732) 993-9850
                                                Facsimile:   (732) 993-9851
                                                steven.gooby@ansalaw.com

                                                *Counsel for AlphaCard LLC, DiscountID.com LLC, and ID Card Group LLC*