**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

ALPHACARD SYSTEMS LLC, et al.,

        Plaintiffs,

    v.

FERY LLC, et al.,

        Defendants.

Civil Action No. 19-20110 (MAS) (TJB)

**MEMORANDUM OPINION**

---

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiffs-Counter Defendants AlphaCard Systems LLC, DiscountID.com LLC, and ID Card Group, LLC's (collectively, "Plaintiffs") Motion to Dismiss Defendant-Counter Plaintiff Fery LLC's ("Fery") counterclaims. (ECF No. 39.) Fery opposed (ECF No. 41), and Plaintiffs replied (ECF No. 45). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Plaintiffs' Motion is granted in part and denied in part.

## I. BACKGROUND[1]

Plaintiffs and Fery sell identification card products and related supplies ("ID Products") on Amazon Marketplace. *AlphaCard Sys. LLC*, 2020 WL 4736072, at *1. Plaintiffs allege that Fery

---

[1] The parties are familiar with the factual and procedural history of this matter and therefore the Court recites only those facts necessary to resolve the instant motion. *See AlphaCard Sys. LLC v. Fery LLC*, No. 19-20110, 2020 WL 4736072 (D.N.J. Aug. 14, 2020).

1

has placed fake, positive reviews for its own products on Amazon's Marketplace. *Id.* Based on those allegations, Plaintiffs filed a two-count action against Fery in November 2019 asserting claims for (1) false advertising under the Lanham Act, 15 U.S.C. § 1125(a) and (2) tortious interference with prospective business advantage under New Jersey law. *Id.* In an earlier opinion, the Court denied Fery's motion to dismiss both counts. *Id.* at *5.

Thereafter, in September 2020, Fery filed an Answer and Counterclaims against Plaintiffs. (Answer & Countercls., ECF No. 33.) In those pleadings, Fery alleges that Plaintiffs and their nonparty corporate affiliates—the Barcodes Enterprise[2]—are seeking to monopolize the "ID Products market." (Countercls. ¶¶ 16, 25.) Fery asserts, on information and belief, that the Barcodes Enterprise "controls in excess of seventy (70%)" of the "market for direct online sales of ID printers and related security control equipment and supplies to commercial and government customers i[n] the geographic market of the United States[.]" (*Id.* ¶ 17.) Fery alleges that, despite acting as a single enterprise, Plaintiffs "us[e] their own free-standing websites that they deceptively present to customers as numerous unrelated businesses[.]" (*Id.* ¶¶ 15, 20.) Fery also alleges that Plaintiffs "have historically charged prices above competitive levels for their products." (*Id.* ¶ 18.)

According to Fery, Plaintiffs and the Barcodes Enterprise are seeking to "curtail all sales of ID products on Amazon Marketplace" to maintain monopoly power. (*Id.* ¶¶ 24, 30.) In that regard, Fery appears to allege that Plaintiffs are seeking to limit competition in general and competition with Fery in particular. As to competition in general, Fery asserts that Plaintiffs are "covertly urging Amazon customers"—in breach of their contract with Amazon—"to divert their purchases from the Amazon Marketplace to the various Barcodes Enterprise's websites on

---

[2] Referring to them collectively as the Barcodes Enterprise, Fery indicates that Plaintiffs and four other nonparty entities are subsidiaries of nonparty Barcodes, which in turn is controlled by nonparty Odyssey Investment Partners, LLC. (Countercls. ¶¶ 1–9, 15.)

2

Google." (*Id.*) As to Fery in particular, Fery asserts that Plaintiffs made "disparaging allegations to manufacturers that Fery's sales on the Amazon Marketplace were illegal[]" and brought the "present frivolous allegations against Fery in this Court." (*Id.* ¶¶ 26, 28.) With respect to the disparagement allegations, "Fery alleges, on information and belief, that at least one manufacturer, refused to make sales to Fery, after having previously done so, because the Barcodes Enterprise induced it to refrain from such dealing." (*Id.* ¶ 27.)

Based on these allegations, Fery asserts four counterclaims against Plaintiffs: three antitrust claims under Section 2 of the Sherman Act for attempted monopolization, monopolization, and conspiracy to monopolize; and one claim for tortious interference with existing business relations. (*Id.* ¶¶ 31–67.) On October 16, 2020, Plaintiffs moved to dismiss the counterclaims for failure to state a claim.

## II. **LEGAL STANDARD**

A district court conducts a three-part analysis when considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at

3

679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

## III. DISCUSSION

### A. Antitrust Claims

Plaintiffs raise multiple challenges to Fery's antitrust claims, but the Court need only address one of those arguments at this time: whether Fery adequately pled antitrust injury. Specifically, Plaintiffs argue that Fery's antitrust claims should be dismissed because Fery failed to allege an injury that impacted the overall competitive market. (Pls.' Moving Br. 7–10, ECF No. 39-1.) The Court agrees.

"Competition is at the heart of the antitrust laws[.]" *Phila. Taxi Ass'n, Inc. v. Uber Techs., Inc.*, 886 F.3d 332, 338 (3d Cir. 2018). "Antitrust laws are only aimed at curtailing anticompetitive conduct, 'or a competition-reducing aspect or effect of the defendant's behavior.'" *Pfizer Inc. v. Johnson & Johnson*, 333 F. Supp. 3d 494, 501 (E.D. Pa. 2018) (quoting *Phila. Taxi Ass'n*, 886 F.3d at 338). Stated differently, "the underlying principle of our antitrust laws is to protect competition, not competitors." *Id.* (citing *Phila. Taxi Ass'n*, 886 F.3d at 338).

"The law therefore establishes antitrust injury as a common pleading requirement for antitrust plaintiffs." *Id.* (citing in part *Brunswick Corp. v. Peublo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). An antitrust injury is an "injury of the type the antitrust laws were intended to prevent and that flow from that which makes defendants' acts unlawful." *Brunswick*, 429 U.S. at 489. "Under this requirement, [a party] 'must allege harm to competition, not just harm to its own business' to adequately plead antitrust injury." *Pfizer*, 333 F. Supp. 3d at 502 (citations omitted).

4

"This standard, on a motion to dismiss, requires an antitrust plaintiff to allege facts capable of supporting a finding or inference that the purported anticompetitive conduct produced increased prices, reduced output, or otherwise affected the quantity or quality of the product." *Id.* (citations omitted).

Here, Fery fails to adequately plead antitrust injury because it only alleges injury to itself, not to competition in the relevant market. According to the counterclaims, Fery was injured by Plaintiffs' alleged anti-competitive conduct because Fery lost at least one supplier due to Plaintiffs' "disparaging allegations" and because Fery has been forced to defend against Plaintiffs' "baseless litigation." (Countercls. ¶¶ 26–29.) The counterclaims fail, however, to address how Plaintiffs' alleged anti-competitive conduct negatively impacted the overall competitive market by, for example, increasing prices, reducing output, or otherwise affecting the quantity or quality of the products offered for sale to the market. *Pfizer*, 333. F. Supp. 3d at 502. Indeed, in each of its three antitrust claims, Fery only asserts that "*Fery has sustained the type of injury* that the antitrust laws were intended to prevent and that which flows from the anticompetitive and exclusionary characteristics that makes [Plaintiffs] and the Barcodes Enterprise's conduct unlawful." (Countercls. ¶¶ 37, 48, 56 (emphasis added).) In short, Fery's counterclaims fail to adequately allege that Plaintiffs' alleged conduct had an anti-competitive impact in the "ID Products market."

Fery's opposition brief highlights its failure to properly plead injury to the overall competitive market. There, Fery recounts some of Plaintiffs' alleged anti-competitive conduct but nevertheless fails to adequately address how that conduct had a wider impact on the competitive market. (*See* Fery Opp'n Br. 8–9, ECF No. 41.) Moreover, for the first time—without citation to its counterclaims—Fery vaguely alleges that Plaintiffs' "conduct allegedly affected prices generally[.]" (*Id.* at 8.) It is axiomatic, however, that pleadings "may not be amended by the briefs

5

in opposition to a motion to dismiss." *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted). Nor can Fery's assertion that *Plaintiffs* "have historically charged prices above competitive levels for their products" support an inference that such a pricing scheme damaged competition. (*See* Countercls. ¶ 18.) "[A] competitor cannot suffer antitrust injury from its rival's charging higher prices" because "competitors have only to gain from their rivals' higher pricing schemes." *The Treasurer, Inc. v. Phila. Nat'l Bank*, 682 F. Supp. 269, 272 n.2 (D.N.J. 1988) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)).

Moreover, Fery's conclusory assertion that Plaintiffs have "exclud[ed] market entrants" is insufficient to state an antitrust injury. (Fery Opp'n Br. 8 (citing Countercls. ¶ 30).) It is well established that the Court may ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678. In its pleadings, Fery provides no factual allegations to support its claim that Plaintiffs excluded market entrants.[3] In fact, Fery's own description of the Amazon Marketplace suggests that no market entrants have been excluded from the purported relevant market. (*See, e.g.*, Countercls. ¶ 23 ("Selling through the Amazon Marketplace is a uniquely efficient distribution channel for new entrants into any market, including the ID products market, and is the best means for market entrants who do not have established, free-standing websites able to compete with the Barcodes Enterprise in the sale of those products.").)

On these facts, the Court finds that Fery failed to adequately plead an antitrust injury and, accordingly, grants Plaintiffs' Motion to Dismiss Fery's antitrust claims—counterclaims one

---

[3] Similarly, Fery's conclusory allegation regarding the diversion of customers from Amazon to Plaintiffs' own websites is also insufficient to state an antitrust injury. (Countercls. ¶ 24.) And although the Court only addresses antitrust injury, the Court notes that Fery fails to adequately explain or provide any support—even in its opposition brief—for its proposition that those actions constitute actionable anti-competitive conduct. (*See* Fery Opp'n Br. 12–20.)

through three. *See Phila. Taxi Ass'n*, 886 F.3d at 344 (affirming motion to dismiss where appellants "fail[ed] to aver an antitrust injury, such as a negative impact on consumers or to competition in general, let alone any link between this impact and the harms [a]ppellants have suffered.").

## B.     Tortious Interference with Existing Business Relations

Plaintiffs also seek to dismiss Fery's tortious inference claim. A claim of tortious interference with a contract requires a plaintiff to allege: "(1) actual interference with a contract; (2) that the interference was inflicted intentionally by a defendant who is not a party to the contract; (3) that the interference was without justification; and (4) that the interference caused damage." *Tipton v. U-Go, Inc.*, No. A-1543-12T3, 2014 WL 4231363, at *5 (N.J. Super. Ct. App. Div. Aug. 28, 2014).

First, Plaintiffs argue that Fery has failed to allege it had a protected interest with which Plaintiffs tortiously interfered. (Pls.' Moving Br. 26–27.) "A complaint based on tortious interference must allege facts that show some protectable right—a prospective economic or contractual relationship." *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 37 (N.J. 1989); *see also Lamorte Burns & Co., Inc. v. Walters*, 770 A.2d 1158, 1170 (N.J. 2001) ("Not only does the law protect a party's interest in a contract already made, but it also protects a party's interest in reasonable expectations of economic advantage."). Here, the Court finds that Fery has sufficiently pled facts that would, if true, establish tortious interference with an existing contractual relationship. Fery alleges that Plaintiffs made "disparaging allegations to manufacturers that Fery's sales on the Amazon Marketplace were illegal[.]" (Countercls. ¶ 26.) According to the counterclaims, "at least one manufacturer[] refused to make sales to Fery, after having previously done so, because the Barcodes Enterprise induced it to refrain from such dealing." (*Id.* ¶ 27.) The Court finds that these pleadings sufficiently demonstrate allegations of interference with Fery's

7

existing contractual relations. *See Nostrame v. Santiago*, 61 A.3d 893, 902 (N.J. 2013) (holding "[t]here can be no doubt that inducing another to end a contractual relationship through acts that amount to fraud or defamation would be wrongful" and that "deceit and misrepresentation can constitute wrongful means").

Second, Plaintiffs argue that Fery fails to adequately plead malice. (Pls.' Moving Br. 27.) According to Plaintiffs, Fery "cannot show that Plaintiffs' alleged comment was without justification or excuse." (*Id.* at 28.) To determine malicious interference, "the relevant inquiry is whether the conduct was sanctioned by the 'rules of the game,' [and] where a plaintiff's loss of business is merely the incident of healthy competition, there is no compensable tort injury." *Lamorte Burns & Co.*, 770 A.2d at 1170. As noted above, Fery alleges that Plaintiffs made "disparaging allegations to manufacturers" about the legality of Fery's sales on the Amazon Marketplace and that, as a result, Fery lost at least one supplier. (Countercls. ¶¶ 26–27.) Accepting those allegations as true, the Court cannot find that such conduct was sanctioned by the rules of the game. Moreover, Plaintiffs' reliance on third-party analyses at the pleading stage is misplaced; whether Fery placed fake, positive reviews for its own products remains a question of fact. The Court, therefore, finds that Fery sufficiently alleged malice.

Finally, Plaintiffs argue that Fery fails to properly plead that it suffered any economic damage. (Pls.' Moving Br. at 28–29.) The Court disagrees. Fery alleges that Plaintiffs "harmed Fery both by reducing the number and variety of products it could offer its customers and by disparaging customers from dealing with Fery," and as "a result of those actions, Fery has been caused great economic harm." (Countercls. ¶¶ 64-65.) Moreover, the Court finds it prudent to "await the development of [the] record" before dismissing a tortious interference claim for failing

8

to allege damages. *Printing Mart*, 563 A.2d at 47. The Court, accordingly, denies Plaintiffs' Motion to Dismiss Fery's tortious interference claim.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion to Dismiss is granted in part and denied in part. The Court will enter an Order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**